**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Kocher's Water Pumps & Tanks Inc., et al., | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil No.:  5:25-cv-06959 |
| | : | |
| SELECTIVE INSURANCE COMPANY | : | |
| OF THE SOUTHEAST, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                              **June 24, 2026**

### I.      OVERVIEW

Plaintiffs Kocher's Water Pumps & Tanks Inc. ("Kocher's Water") and Jason Kocher ("Mr. Kocher") seek a declaratory finding that their insurer, Defendant Selective Insurance Company of the Southeast ("Selective"), is obligated to indemnify and/or defend Plaintiffs in a pending state court action. Defendant filed a motion for judgment on the pleadings. For the following reasons, Defendant's motion is **GRANTED**.

### II.      FACTUAL BACKGROUND

#### a.  The Insurance Policy

For the relevant period, Defendant insured Plaintiffs under a commercial policy ("Selective Policy"). *See generally* Def.'s Answer, Ex. A (ECF No. 6).  Under its terms, Defendant must pay damages that Plaintiffs are legally obligated to pay because of "bodily injury" or "property damage" to which the Selective Policy applies. *Id.* at 166. It further provides that Defendant must defend the insured against any suit seeking those damages. *Id*. The Selective Policy applies to

1

"bodily injury" and "property damage" only if "[t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" *Id.*

As defined in the Selective Policy, "bodily injury" means "bodily injury sickness or disease sustained by a person, including death resulting from any of these at any time. This includes mental anguish resulting from any bodily injury, sickness or disease sustained by a person." *Id.* at 196. An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 199. But the Selective Policy specifically excludes "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." *Id.* at 167.

### b.  The Underlying Action[1]

Michael Kitchko ("Mr. Kitchko") brought a civil complaint ("Underlying Action") against Kocher's Water, Mr. Kocher, and Mr. Kocher's wife, Melanie Kocher ("Ms. Kocher") in the Court of Common Pleas of Northampton County, Pennsylvania. *See generally* Decl. Compl., Ex. A ("Underlying Compl.") (ECF No. 1). Mr. and Ms. Kocher owned, operated, and managed Kocher's Water. *Id.* ¶ 6. Ms. Kocher is not a party in this suit. *See id.* ¶¶ 11–14.

Mr. Klitchko hired Kocher's Water as a subcontractor and was unable to pay Kocher's Water for the outstanding balance due. *Id.* ¶¶ 7, 9. Thereafter, Kocher's Water sued Mr. Klitchko in state court for the outstanding debt. *Id.* ¶ 11. On December 29, 2022, Mr. Kocher arrived uninvited and without notice to Mr. Klitchko's home in a company vehicle during business hours to confront him about the outstanding debt. *Id.* ¶¶ 12–14. Mr. Klitchko called police when Mr. Kocher arrived. *Id.* ¶ 14. After a verbal altercation but otherwise unprovoked by Mr. Klitchko, Mr. Kocher punched Mr. Klitchko in the face, knocking him to the ground. *Id.* ¶¶ 15, 19. When the

---

[1] The Court recites the facts as set forth in the Underlying Action's Complaint.

police arrived at the scene and observed that Mr. Klitchko's left eye was bleeding, they called an ambulance and arrested Mr. Kocher. *Id.* ¶¶ 16–17.

Mr. Kocher was taken into custody by police and charged for perpetrating the attack on Mr. Klitchko. *Id.* ¶¶ 18, 19. Mr. Kocher acted with "intent to inflict serious bodily injury upon [Mr. Klitchko], and was not acting in self-defense," and Mr. Klitchko suffered "permanent injuries and damages, including eye damage." *Id.* ¶¶ 20–21.

Mr. Klitchko filed the Underlying Action seeking relief on six Counts: (1) assault and battery, (2) conspiracy, (3) intentional infliction of emotional distress, (4) negligent infliction of emotional distress ("NIED"), (5) vicarious liability, and (6) punitive damages.[2] *See generally* Underlying Compl. (ECF No. 1).

## III.    LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED R. CIV. P. 12(c). The court analyzes a motion for judgment on the pleadings in the same manner as one for failure to state a claim under Rule 12(b)(6). *Wolfington v. Reconstructive Orthopedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019). Accordingly, the Court may not grant a motion for judgment on the pleadings "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law, . . . view[ing] the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Hayes v. Cmty. Gen.*

---

[2] Mr. Klitchko brought Counts One through Four and Count Six against Mr. Kocher, and Counts Five and Six against Kocher's Water. *See* Underlying Compl., at 6-10.

*Osteopathic Hosp.*, 940 F.2d 54, 56 (3d Cir. 1991) (quoting *Society Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)).

In deciding a motion for judgment on the pleadings, "a court may only consider 'the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'" *Wolfington*, 935 F.3d at 195 (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).

## IV.    DISCUSSION

"The question of whether a claim against an insured is 'potentially covered [and the insurer owes a duty to defend] is answered by comparing the four corners of the insurance contract to the four corners of the complaint.'" *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 517 (3d Cir. 2012) (quoting *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010)). "An insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy." *Id.* "In determining the existence of a duty to defend, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured." *Firemen's Ins. Co. of Wash., D.C. v. TRAY-PAK Corp.,* 130 F. Supp. 3d 973, 980, (E.D. Pa. 2015) (quoting *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.,* 193 F.3d 742, 746 (3d Cir. 1999)). The Court must first determine the "scope of the policy's coverage" before "examin[ing] the complaint in the underlying action to ascertain if it . . . avers facts that would support a recovery covered by the policy," thereby triggering coverage. *Minn. Lawyers Mut. Ins. v. Mazullo*, No. 11-1470, 2012 WL 2343308, at *4 (E.D. Pa. June 20, 2012) (quoting *Gen. Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997)).

The insured bears the burden to establish that the complaint is within the policy coverage, at which time the burden would shift to the insurer to establish that an exclusion applies. *Erie Ins. Group v. Catania*, 95 A.3d 320, 322 (Pa. Super. Ct. 2014). "Policy exclusions are strictly construed against the insurer." *CGU Ins. v. Tyson Assoc.*, 140 F. Supp. 2d 415, 419 (E.D. Pa. 2001) (citing *Selko v. Home Ins.*, 139 F.3d 146 (3d Cir. 1998)).

In construing the insurance policy, the Court must adhere to the Pennsylvania canons of policy interpretation. *See Vitamin Energy, LLC v. Evanston Ins.*, 22 F.4th 386, 392, 397 n.7 (3d Cir. 2022). When interpreting an insurance policy, the language "must be construed in its plain and ordinary sense, and the policy must be read in its entirety." *Pa. Nat'l Mut. Cas. Ins. v. St. John*, 106 A.3d 1, 14 (Pa. 2014). The goal is "to effectuate the intent of the parties as manifested by the language of the specific policy." *Id.*

The duty to defend is broader than the duty to indemnify, and they are separate and distinct obligations. *Am. & Foreign Ins.*, 2 A.3d at 540 (citing *Kvaerner Metals Div. of Kvaerner U.S. Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 896 n.7 (duty to defend is broader); *Erie Ins. Exch. v. Transamerica Ins.*, 533 A.2d 1363, 1368 (Pa. 1987) (duties are separate and distinct)). Because the duty to defend is broader, where there is no duty to defend, there can be no duty to indemnify. *See Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016); *see also Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 226 (3d Cir. 2005) ("[T]here is no duty to indemnify if there is no duty to defend.").

Plaintiffs allege that the duties to defend and indemnify are both within the scope of the insurance policy and triggered by the facts in the complaint brought against them. *See* Decl. Compl. ¶ 4 (ECF No. 1). The duty to defend is triggered where at least one claim in a complaint against an insured alleges an injury that is actually or potentially covered under the policy on its face. *Am.*

*& Foreign Ins.*, 2 A.3d at 540 (citing *Erie Ins. Exch.*, 533 A.2d at 1368). The duty to indemnify, however, is "more limited because it arises only if it is established that the insured's damages are actually covered by the terms of the policy." *Allstate Ins. v. Drumheller*, 185 F. App'x 152, 154 n.2 (3d Cir. 2006). Where a complaint raises a duty to defend, "the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim." *Frog, Switch & Mfg. Co.*, 193 F.3d at 746 (citing *Erie Ins. Exch.*, 533 A.2d at 1368). "Accordingly, it is the potential, rather than the certainty, of a claim falling within the insurance policy that triggers the insurer's duty to defend." *Am. & Foreign Ins.*, 2 A.3d at 541. The duty to defend is also "not limited to meritorious actions; it even extends to actions that are 'groundless, false, or fraudulent' as long as there exists the possibility that the allegations implicate coverage." *Id.* (quoting *Transamerica Ins.*, 533 A.2d at 1368).

### a. The Selective Policy does not provide coverage for "bodily injury" caused by an intentional act of the insured.

The Underlying Action alleges that Mr. Kocher acted intentionally when he struck Mr. Klitchko. *See generally* Underlying Compl. (ECF No. 1). Plaintiffs contend that Defendant has a duty to defend and/or indemnify because the Underlying Action asserts NIED and vicarious liability claims, and those claims could not have been "intended" by Plaintiffs. Mem. of L. in Support of Pl.'s Resp. to Selective Ins. Co. of the Se.'s Mot. For J. on the Pleadings ("Pl.'s Resp.") at 5–11 (ECF No. 16). Thus, the sole question presented is whether Selective is contractually obligated defend and/or indemnify Plaintiffs when the claims of NIED and vicarious liability derive from Mr. Kocher's intentional conduct.

### 1. The facts of the Underlying Action are not within the Selective Policy coverage as to Mr. Kocher or Kocher's Water.

Plaintiffs rely on *QBE Insurance Corp. v. Walters* to argue that Defendant "may not justifiably refuse to defend claims against [Plaintiffs] unless it is clear from an examination of the

6

allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage policy." 148 A.3d 785, 788 (Pa. Super. Ct. 2016). To establish that coverage is not clearly precluded, Plaintiffs rely exclusively on the Underlying Action's pleading of negligence and vicarious liability. *See* Pl.'s Resp. at 6–8 (ECF No. 16).

Under the Selective Policy, Defendant will only be legally obligated to pay damages due to "bodily injury" if "the 'bodily injury' . . . is caused by an 'occurrence' that takes place in the 'coverage territory.'" Def.'s Answer, Ex. A, at 166 (ECF No. 6). Further, the policy defines an "occurrence" as "an accident." *Id.* at 196. Construing the policy in its "plain and ordinary sense," there is no question that an "occurrence" is not an intentional act.

Under Pennsylvania law, where negligence-based claims derive from an intentional act, such claims do not constitute an "occurrence." *See Navigators Ins. Co. v. Oasis on Essington, Ltd.,* No. CIV.A. 11-7074, 2014 WL 3765495, at *9 (E.D. Pa. July 31, 2014) (explaining that intentional or reckless conduct that gives way to claims of negligence is not an "occurrence."). The factual allegations in the complaint, rather than the specific causes of action pleaded, are decisive in determining coverage. *See State Farm Fire & Cas. Co. v. Walker*, No. 21-CV-3325, 2021 WL 5050102, at *3 (E.D. Pa. Oct. 29, 2021). Intentional acts, such as assault and battery, cannot be transformed into mere carelessness by allegations of negligence. *See Am. Nat'l Prop. & Cas. Cos. v. Hearn*, 93 A.3d 880, 885-86 (Pa. Super. Ct. 2014); *see also Mut. Ben. Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999). Here, the facts contained in the Underlying Action unequivocally support the conclusion that Mr. Kocher acted intentionally. Because the NIED claim derives from Mr. Kocher's punching Mr. Klitchko, Defendant is not obligated to defend Plaintiffs.

Moreover, a claim of vicarious liability predicated on an intentional act of an employee is not an "occurrence," and therefore, does not trigger a duty to defend. *See e.g., Britamco*

7

*Underwriters v. Stokes*, 881 F. Supp. 196, 200 (E.D. Pa. 1995) (holding that respondeat superior claims seeking to hold insured liable for employee's intentional assault and battery could not potentially fall within coverage because intentional acts are not "occurrences"); *Essex Ins. Co. v. Quick Stop Mart*, No. 07-CV-1909, 2009 WL 700879, at *7 (E.D. Pa. Mar. 13, 2009) (finding no duty to defend insured on vicarious liability claim predicated on employee's alleged assault and battery where policy defined "occurrence" as an accident); *Oasis on Essington, Ltd.*, 2014 WL 3765495, at *9 (concluding that vicarious-liability claims based on employees' intentional acts fall outside the definition of an "occurrence" and therefore do not trigger a duty to defend). As Plaintiffs note, vicarious liability is a theory of recovery based in negligence. *See* Pl.'s Resp. at 7, 8 (ECF No. 16). It follows that if Selective has no duty to defend or indemnify for Count III (NIED) of the Underlying Action, Selective has no duty as to Count V (vicarious liability) when both counts derive from the same intentional conduct.

### 2. Claims sounding in negligence that arise from intentional conduct do not circumvent the "Expected or Intended Injury" exclusion.

Plaintiffs contend that because NIED and vicarious liability do not require intentional conduct, the "Expected or Intended Injury" exclusion does not preclude coverage. *Id.* at 8–9. Plaintiffs rely on *Griggs Road, L.P. v. Selective Way Insurance Co. of America*, 368 F. Supp. 3d 799, 804 (M.D. Pa. 2019) to establish that under Pennsylvania law, exclusions are narrowly construed in favor of coverage, and that when coverage is denied the insurer bears the burden to establish that the exclusion applies. Pl.'s Resp. at 9–10 (ECF No. 16). Defendant has met this burden.

The "Expected or Intended Injury" exclusion bars recovery for intentional conduct. Even viewing the allegations set forth in the complaint in the light most favorable to Plaintiffs, there is no material issue of fact as to whether Mr. Kocher intended to strike Mr. Klitchko. Under

Pennsylvania law, "the particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint." *Erie Ins. Exch v. Fidler*, 808 A.2d 587, 590 (Pa. Super. Ct. 2002) (citing *Haver*, 725 A.2d at 745).

The factual allegations contained in the Underlying Action establish that Mr. Kocher intentionally entered Mr. Klitchko's property to confront him, and then punched Mr. Klitchko, knocking him to the ground. Indeed, as *Fidler* cautions, if the language of the pleadings alone were permitted to dictate coverage, an insured may receive coverage contrary to the intent of the parties. *See Fidler*, 808 A.2d at 590.

## V.    CONCLUSION

Despite the Underlying Action's pleadings of negligence and vicarious liability, these claims derive directly from Mr. Kocher's intentional conduct. The Selective Policy's definition of "occurrence" (*i.e.*, accident) and the Expected or Intended Injury exclusion make clear that Defendant has no duty to defend or indemnify Plaintiffs from damages arising from Mr. Kocher's intentional conduct. Accordingly, Defendant's Motion is **GRANTED**. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

9